[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on December 30, 1982 at Bombay, India. The plaintiff has resided continuously in this state since April 1991. There is one minor child issue of the marriage: Matthew Ribeiro, born April 20, 1993. CT Page 11429
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The court has carefully considered the criteria set forth in §§ 46b-56, 46b-81, 46b-82, 46b-84 and 46b-62 of the Conn. General statutes in reaching the decisions reflected in the orders that follow.
FRAUDULENT CONVEYANCE CLAIM
The plaintiff has joined her brother-in-law and sister-in-law, Kevin Roach and Anita Roach, as third party defendants in this case, alleging that the sum of $90,000 in marital property (the court is rounding out the figures in question) was fraudulently transferred by her husband, the defendant Joseph Vincent Ribeiro, to Kevin Roach and Anita Roach with the intent to defraud the plaintiff, Susan Ribeiro, from having sums distributed to her in a dissolution action.
Again, using round figures, it was clear from the evidence presented that approximately $26,000 represented earnings and funds of the defendant, Kevin Roach. The defendant Roach started to accumulate this money in May 1990. Mr. Ribeiro and Mr. Roach placed this money in a joint account in their names. In January 1992, this money was transferred into an account in three names: Kevin Roach, Anita Roach and Vincent Ribeiro. Kevin Roach continued to put money from his earnings into this account. Several wire transfers were made by Mr. Roach's employer into this account.
It should be noted that Mr. Roach was in the Maritime Navy at this time. He spent long periods of time at sea and away from his native country of India. Both he and his wife, Anita Roach, were awaiting to emigrate to the United States. The Roaches set up this account for their use when they came to the United States. Mr. Ribeiro made no deposits of his earnings or his own money into this account.
At the time this account was initiated in 1990, there was no dissolution case pending. One of the few things the plaintiff and the defendant Mr. Ribeiro agreed on was that neither of them discussed any marital difficulties with the Roaches. The Ribeiros had a child in April 1993 and continued to live together until CT Page 11430 the dissolution action was instituted in September 1995. At the time of this transfer, the plaintiff wife was not a creditor, nor was the defendant husband insolvent — nor was there any contemplation of divorce in 1990, 1991 or 1992.
The defendant Joseph Ribeiro came to this country in 1966 to attend graduate school at the University of Notre Dame. He obtained a master's degree in chemical engineering in 1967. Thereafter, he stayed on at the university for further studies. Mr. Ribeiro obtained full time employment in 1971. Up until Mr. Ribeiro obtained employment in 1971, his education and living expenses were subsidized with funds from his three aunts in India. The aunts advanced Mr. Ribeiro a total of approximately $45,000, (the court is rounding off this figure), over a period of approximately six years.
On the eve of Mr. Ribeiro's marriage to the plaintiff in 1982, the aunts wrote a note to Mr. Ribeiro. Mr. Ribeiro was shown the note but this note was kept by his sister, the third party defendant, Anita Roach. (See Ex. T-1).
The aunts did not seek reimbursement for the advanced sums for themselves, but requested that the sum be repaid to Mr. Ribeiro's sister, Anita Roach, the third party defendant, when Anita arrived in the United States. In 1982, Mr. Ribeiro had approximately $41,000 in earnings, all earned prior to his marriage to the plaintiff. In June 1990, Mr. Ribeiro consolidated monies he had earned and accrued prior to his marriage that now totaled approximately $59,015.15. Mr. Ribeiro's testimony was that he did not put in or take out any money for his own use from this account.
In 1992 the defendant Vincent Ribeiro set up a joint account in the amount of approximately $64,000 (the court is using round numbers) in his name and in the name of his sister, the defendant Anita Roach. The defendant Anita Roach transferred this account into the name of Anita Roach, in trust for Vincent Ribeiro. The defendant Anita Roach testified she used this money to purchase a home and for her living expenses. The defendant Vincent Ribeiro testified he made no withdrawals or deposits from this account. The defendant Anita Roach considered this account her own.
It is suspicious that from 1972-73, which was the last time any monies were advanced by the aunts to the defendant Vincent Ribeiro, until November 1982, nothing was mentioned or discussed CT Page 11431 indicating that the aunts expected to be reimbursed for the sums advanced. No request or demand for repayment was made by the aunts to the defendant Vincent Ribeiro for reimbursement.
On the eve of the defendant's marriage to the plaintiff in 1982 this note now surfaces. This note was addressed to the defendant Vincent Ribeiro, but the defendant testified he never received this note but was aware of its contents. This note has apparently been in the possession of the defendants Roach. The three aunts are all deceased.
The parties appear to be adept at transferring and shifting, accounts from one to the other, joint, sole and in trust. These machinations however fall far short of clear and convincing evidence of a fraudulent conveyance.
At the time of the transfer in 1992, there was no dissolution pending or contemplated, the dissolution having been instituted in September 1995. The plaintiff was not a creditor of the husband at the time of the transfer. After the transfer, the husband still had sufficient sums to maintain himself and his family.
The Roaches, in 1992, were not aware of any marital difficulties between the plaintiff and the defendant. Both the plaintiff and the defendant Vincent Ribeiro testified they never discussed any marital problems with the Roaches.
The court finds there is not sufficient evidence to sustain a finding of a fraudulent conveyance.
FACTS
The parties have been married for approximately 15 years, although they have been separated since September 1995. The plaintiff is 43 years of age and in good health. She has a college degree in history from the University of Bombay. She also attended a secretarial school in London. The plaintiff came. to the United States in 1983, shortly after the marriage on December 30, 1982. This was an arranged marriage, arranged by the families of the parties. The plaintiff worked intermittently throughout the marriage. The parties lived in Chicago, then moved to Wappinger Falls, New York, and then to Derby, Connecticut, to accommodate the defendant's employment problems. The plaintiff claims the defendant did not encourage her to work and refused to CT Page 11432 share their financial situation with her. The plaintiff claims the defendant discouraged her from driving and objected to her becoming a U.S. citizen. The plaintiff was suspicious of the defendant when he refused to share their financial picture with her.
The parties went to counseling during the course of their marriage, but to no avail. The defendant was very controlling over the plaintiff which undermined her self-esteem and self-confidence.
The defendant is 52 years of age. He claims his health is poor and that he has lost weight. The defendant also has a degree from the University of Bombay. He obtained a master's degree in chemical engineering from the University of Notre Dame in 1967.
The defendant had difficulty in obtaining employment in his chosen field. He worked for 12 years as a program analyst — his longest term of employment. The parties moved to Wappinger Falls, New York, where the defendant was employed for two years with IBM. Thereafter in 1991, the defendant obtained employment as a programmer with Sikorsky Aircraft in Shelton, for approximately three years when he was laid off. The defendant was out of work for two years. His highest salary at Sikorsky was approximately $40,000 per year. In February 1996, he obtained work at MBI in Norwalk. However, he was terminated in October 1996. The defendant is presently working as a clerk in the U.S. District Court, earning approximately $11 per hour.
The defendant claims their marital problems are due to the plaintiff's family — all of whom live in India. The defendant claims the plaintiff's mother was bossy and only wanted to shop when she came to visit the parties in this country.
When the defendant found out the plaintiff's brother was accompanying the plaintiff and their small child on a return to this country from India in 1994, he turned off the heat and electricity in the apartment and went to stay with his sister. The plaintiff, their small child and her brother were forced to spend the night in the apartment without heat or electricity. When the plaintiff's brother left, the defendant returned and restored the electricity. He refused to pay the rent for the apartment while the plaintiff's mother was there, thereby having an eviction notice served in August 1995. CT Page 11433
The plaintiff claimed she never saw the completed tax returns and on occasion signed the returns in blank. The defendant denied this allegation.
There were different versions over access to cars, the key to the post office box and other matters. The defendant did not want the plaintiff to become a U.S. citizen, because he did not want the plaintiff to use him — through the marriage — to sponsor, her family to come to the United States.
The plaintiff was not candid in her answers to the discovery and disclosure requests. The defendant was not forthright in disclosing and discussing his finances.
No useful purpose would be served by a review of all the evidence presented in this five day trial. Unfortunately, the parties were unable to resolve their marital difficulties. The court declines to assess fault to either party for the breakdown of the marital relationship.
The plaintiff is seeking sole custody of the minor child. The parties have been unable to communicate with each other concerning the best interests of the child. The plaintiff continues to be suspicious and mistrustful of the defendant and has alleged sexual abuse, improper touchings, on the defendant's part.
The defendant appeared controlling and overbearing and the parties show a lack of trust and respect one with the other. Both are suspicious of each other, heightened by the five day trial. The attorney for the minor child reluctantly recommended joint custody. Although this court values and has high regard for the opinion of the attorney for the minor child, it would appear that joint custody is not in the best interests of the minor child. The parties are suspicious of one another; they are unable to communicate with each other concerning the health, education and welfare of the minor child; the parties disagree and are unable to agree when it comes to the minor child. They do not appear to be able to work together for the best interests of the child.
The issue of the allegation of sexual abuse by the defendant father is a troubling one. We have a four year old boy who has a good relationship with his father. The child has reported to his mother that, "Daddy pulled my pee", with his clothes on, along with a description of a cow game. CT Page 11434
The child was examined and interviewed by several people including the Department of Family Services, Yale Child Guidance, and the Stamford Child Guidance Clinic. None of the agencies were able to confirm neglect or abuse. The final determination was that the case was closed as there was no conclusive evidence either way. The court reviewed the 40 minute tape of the interview of the minor child by a social worker. Even with this tape, the authorities and investigative agencies determined there was not enough evidence to support a confirmation of the allegation of sexual abuse and the case was closed.
It is strongly suggested that the plaintiff and the defendant as well as the minor child seek and obtain a course of counseling and therapy.
The following orders shall enter:
CUSTODY AND VISITATION
1. Sole custody of the minor child is awarded to the plaintiff mother.
2. The plaintiff shall, however, confer and discuss with the defendant on major issues relating to the health, education and welfare of the minor child, as the father desires to be a presence in his son's life. The plaintiff shall have the final determination and make the final decisions with respect to the matters involving the minor child.
3. The defendant shall be entitled to receive all school records, report cards and paperwork from school, medical reports, progress reports, et cetera relating to the minor child. The defendant shall be entitled to this information in a prompt and reasonable time.
4. Neither party shall make derogatory comments against the other in front of the child and shall not allow any other third party to make derogatory comments in the presence of the minor child.
5. The plaintiff shall give the defendant 60 day advance notice of her intent to travel outside the state of Connecticut or the United States with the minor child. CT Page 11435
VISITATION
1. The defendant shall have visitation with the minor child on Sundays from ten a.m. to six p. m. The defendant shall be responsible for transportation arrangements for the child. The defendant shall contact the plaintiff 24 hours in advance if he does not plan to exercise any scheduled visitation.
2. In addition, the defendant may exercise visitation one week night from five p. m. to seven p. m. if the defendant's work schedule permits.
3. The defendant shall be permitted to telephone the minor child three times per week not earlier than eight a.m. and not later than seven p. m.
4. It is anticipated that as the child becomes older the visitation schedule will be increased.
5. The defendant shall be entitled to other visitation as the parties shall agree, including holidays and birthdays. Additional visitation shall be encouraged and arranged by the parties.
CHILD SUPPORT
1. The defendant shall pay to the plaintiff as child support the sum of $80 per week in accordance with the child support guidelines. Said child support shall continue until such time as the minor child reaches 18 years of age or completes high school, whichever occurs later.
2. The parties shall exchange financial information for the purposes of determining the appropriate child support on a yearly basis. Said exchange shall occur not later than March 15 of each year. Said financial information shall include but not be limited to W2s, proposed or finalized income tax returns, interest earned statements and any other information relevant to the determination of child support.
3. The parties shall share equally in the cost associated with unreimbursed medical expenses of the minor child, including but not limited to doctors, hospital, dental, orthodontal, optical, psychiatric and psychological counseling, and/or prescriptions. The defendant shall be responsible to provide medical insurance as is available through his employment for the CT Page 11436 benefit of the minor child.
TAX EXEMPTIONS
The parties shall alternate declaring the minor child as a dependent for federal and state income tax purposes. The plaintiff shall claim the child as a deduction for the 1997 tax year.
ALIMONY
The defendant shall pay to the plaintiff as alimony the sum of $25 per week. Said periodic alimony shall terminate on the death of either party, the wife's remarriage or cohabitation or six years from date, whichever event shall first occur.
PROPERTY SETTLEMENT
The defendant shall transfer to the plaintiff by means of an IRA, 60% of all of his deferred compensation plans, including his IRA's, 401 (k) rollover and Sikorsky Credit Union IRA account. Said 60% amount shall be pretax.
FEE FOR ATTORNEY FOR THE MINOR CHILD
The attorney for the minor child is awarded counsel fees in the amount of $4812.56. Said fee shall be paid from the Citibank savings account previously frozen by the court.
DEBTS
1. The outstanding medical bills in the amount of $300 shall be paid from the Citibank savings account previously frozen by the court.
2. The defendant shall be solely responsible for the unpaid utility bills and shall hold the plaintiff harmless therefrom.
COUNSEL FEES
The plaintiff is awarded counsel fees in the amount of $3138. Said award shall be paid to the plaintiff from the Citibank savings account previously frozen by the court and represents the balance of said account. CT Page 11437
LIFE INSURANCE
The defendant shall maintain his existing life insurance policy in the amount of $10,000 for the benefit of the minor child who shall be named as the irrevocable beneficiary thereon.
ARREARAGE
The defendant owes the state of Connecticut the sum of $1756 subject to audit. It is ordered that the defendant shall pay this arrearage to the state of Connecticut at the rate of $10 per week.
PERSONAL PROPERTY
1. The plaintiff shall transfer the 1988 Chevrolet Nova to the defendant forthwith including all car keys.
2. The plaintiff shall return the defendant's wedding ring to the defendant forthwith.
3. The plaintiff shall be entitled to her IRA account free from any claim by the defendant.
4. The plaintiff shall retain all the household furniture, furnishings and possessions currently in her possession free from any claim by the defendant.
Coppeto, J.